JOHN W. TERRY, Plaintiff, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant (The Village of Carpentersville, Defendant-Appellee).

Second District   Nos. 2—96—0284, 2—96—0398 cons.

Opinion filed March 19, 1997.

Michael Resis and Paul J. Sarauskas, both of Querrey & Harrow, Ltd., of Chicago, for appellant.

Bernard Z. Paul, of DeKalb, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

In this declaratory judgment action, defendant State Farm Mutual Automobile Insurance Company (State Farm) appeals the trial court's order granting the motion for summary judgment filed by defendant Village of Carpentersville (Village) and denying the motion for summary judgment filed by plaintiff, John W. Terry, in which State Farm joined by filing a response. The issues on appeal are: (1) whether an employer may assert a lien pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 1994)) against the proceeds of a claim under an employer-paid underinsured motorist insurance policy to recover benefits paid to the employee under a worker's compensation plan; and (2) whether an underinsured motorist insurance carrier may set off from the amount due the injured employee the amount of worker's compensation benefits paid to the employee. We reverse and remand.

On December 27, 1994, plaintiff filed a complaint seeking a declaration of the rights of the parties under a State Farm underinsured motorist policy. In his complaint, plaintiff alleged that, on October 7, 1989, he was employed by the Village as a police officer. He further alleged that, while operating a police car, he was injured in an automobile accident with another motorist. Plaintiff filed a complaint against the other driver, and that case was settled for the $25,000 per-person liability limits of the other driver's insurance policy.

Plaintiff filed a worker's compensation claim against the Village. Pursuant to the settlement agreement for that claim, plaintiff received $69,023.90. Moreover, the $25,000 settlement from the other driver's insurance carrier (minus $6,250 in attorney fees and $363 in costs) was paid directly to the Village.

Plaintiff also filed an underinsured motor vehicle claim under a State Farm policy. Although the declarations page is not included in the record on appeal, the parties agree that the declarations page

lists the Village as the named insured under the State Farm policy and that the Village paid the premiums for that policy. The Village then notified plaintiff's attorney that it was asserting a lien for the worker's compensation payments on any recovery under the underinsured motorist claim.

State Farm filed an answer which admitted that plaintiff had settled with the other motorist for $25,000 and that the gross amount of the worker's compensation settlement was $69,023.90. The answer also requested a declaration that State Farm was entitled to a setoff or a reduction of any underinsured motorist payments to plaintiff in an amount equal to the gross worker's compensation settlement.

The Village filed an answer that admitted all of the allegations of plaintiff's complaint. The Village also filed a counterclaim that sought a declaration that the Village had a statutory lien for $33,380.93 on the proceeds of any recovery under the underinsured motorist claim. The Village calculated the amount of its lien by (1) reducing the $69,023.90 worker's compensation claim by 25% for attorney fees and (2) subtracting $18,387 previously paid to it from the $25,000 settlement with the other driver's insurance carrier.

State Farm filed an answer to the Village's counterclaim in which it denied the applicability of the statutory lien and sought a declaration that State Farm was entitled to a setoff or reduction of any underinsured motorist benefits paid to plaintiff in an amount equal to the gross worker's compensation settlement.

Plaintiff filed an answer to the Village's counterclaim in which he denied that the Village was entitled to enforce a lien on the underinsured motorist benefits in an amount equal to the worker's compensation benefits the Village paid to plaintiff.

The Village filed a motion for summary judgment. In its motion, the Village alleged that it was entitled to be reimbursed from State Farm in the amount of the worker's compensation benefits the Village paid to plaintiff. The Village further alleged that the setoff provision in the State Farm policy was invalid.

Plaintiff filed a motion for summary judgment in which he argued that State Farm was entitled to a setoff of the entire amount of the worker's compensation claim and that the Village had no right to enforce a lien against the proceeds of any recovery under the underinsured motorist policy. Plaintiff also filed a response to the Village's motion for summary judgment. The Village filed a response to plaintiff's motion for summary judgment.

State Farm filed a response to plaintiff's motion for summary judgment in which it agreed that it had a right to assert its setoff and that the Village had no right to enforce a lien against the under-

insured motorist claim. State Farm also filed a response to the Village's motion for summary judgment based on these same arguments. The Village filed a combined reply to both responses.

On January 26, 1996, the trial court conducted a hearing on the motions. On February 9, 1996, the trial court denied plaintiff's motion for summary judgment (in which State Farm joined by its response) and granted the Village's motion for summary judgment.

In its order, the trial court found that there is a patent ambiguity in the policy and that this ambiguity should be construed against State Farm as the drafter of the policy. The court further found that, because the Village expended more than $25,000 in premiums, the Village's reasonable expectation as the insured was that it would have coverage for the loss that is the subject of this suit. Therefore, the trial court found that the Village is entitled to a lien for $69,023.90 against the proceeds of any payment made by State Farm to plaintiff under the underinsured motorist claim.

On March 8, 1996, State Farm filed a notice of appeal. On that same date, plaintiff filed a motion for reconsideration and clarification. On March 25, 1996, the trial court entered an order finding that, since the Village has recovered $25,000 of its lien from the underinsured motorist's insurance carrier, the Village may recover no more than $44,023.90 from the proceeds of the State Farm claim.

On April 1, 1996, State Farm filed a second notice of appeal. On May 6, 1996, we granted State Farm's motion to consolidate the appeals.

■ The first issue on appeal is whether an employer may assert a lien pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 1994)) against the proceeds of a claim under an employer-paid underinsured motorist insurance policy to recover benefits paid to the employee under a worker's compensation plan. Section 5(b) of the Act provides in relevant part:

"(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages ***. *** [T]hen *** from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.
***

If the injured employee *** agrees to receive compensation from the employer ***, the employer may have or claim a lien upon

any award, judgment or fund out of which such employee might be compensated from such third party." 820 ILCS 305/5(b) (West 1994).

The parties allege that this is an issue of first impression in Illinois. However, our research has found one case that dealt with the issue in the context of an uninsured motorist policy.

In *Hartford Accident & Indemnity Co. v. Cummings*, 66 Ill. App. 3d 704, 704-05 (1978), defendants were police officers who were injured by an uninsured motorist while they were on duty riding in a Chicago police car. Hartford, which was defendant Cummings' uninsured motorist carrier, filed a complaint for declaratory judgment seeking a declaration that the policy provided no coverage for the accident.

The complaint alleged that Cummings was covered by worker's compensation insurance at the time of the accident and that his employer was his subrogee. *Hartford*, 66 Ill. App. 3d at 705. The complaint further alleged that Cummings was not entitled to uninsured motorist coverage because an exclusion in the policy provided that it did not apply so as to inure directly or indirectly to the benefit of any worker's compensation carrier. The trial court held, *inter alia*, that Cummings was not afforded coverage under the policy because he had available to him worker's compensation benefits, and the policy provided that it did not apply so as to inure directly or indirectly to the benefit of any worker's compensation carrier. *Hartford*, 66 Ill. App. 3d at 706.

On appeal, the court held that Hartford could not deny coverage for this reason because the employer had no right to reimbursement from the proceeds of the uninsured motorist policy; the employer's right to reimbursement was *against the person causing the injury*. *Hartford*, 66 Ill. App. 3d at 708. The court followed the reasoning in several cases from other jurisdictions which held that the employer's right to reimbursement is only against third-party tortfeasors liable for the employee's injury and not against the employee's uninsured motorist carrier whose liability to the employee is contractual. *Hartford*, 66 Ill. App. 3d at 708.

■ Although the employer's right to reimbursement in *Hartford* was pursuant to a municipal ordinance that is somewhat different than the provision in section 5(b) of the Act, the court in *Hartford* used the reasoning of cases in which the reimbursement provision was similar to the present case. Moreover, we conclude that the language of section 5(b) of the Act that refers to a legal liability to pay damages refers to liability in tort, not contractual liability under an underinsured motorist policy. We hold that an employer or its worker's compensation carrier may not assert a lien pursuant to sec-

tion 5(b) of the Act against the proceeds of an underinsured motorist claim to recover benefits paid to the employee pursuant to a worker's compensation plan. Therefore, the trial court erred in granting summary judgment to the Village.

Our holding is also supported by the majority of the courts in other jurisdictions that have decided the issue. See *Erie Insurance Co. v. Curtis*, 330 Md. 160, 170, 623 A.2d 184, 189 (1993) (and cases cited therein). Some of the reasons given by these courts are: (1) the proceeds of an insurance claim are not converted from contract payments to damages simply because the employee, and not the contracting party, is the intended beneficiary; (2) the underinsured motorist policy is still a contractual liability regardless of who pays the premium; (3) the underinsured motorist carrier is insuring the employee against the risk of inadequate compensation from an underinsured motorist; it is not insuring the tortfeasor against his liability; (4) payments made under an underinsured motorist policy are not made by or on behalf of the underinsured motorist and do not discharge *pro tanto* the liability of the underinsured motorist; and (5) the worker's compensation carrier is not a third-party beneficiary of the underinsured motorist policy. *Erie*, 330 Md. at 171-72, 623 A.2d at 190.

The Village argues that the strongest argument against the lien, that the employee should not be deprived of the benefits of a privately purchased insurance contract, is inapplicable in the present case because it is the Village's underinsured motorist policy that is involved. However, we agree with the rationale of those courts that have denied the lien even where the employer paid the insurance premiums. See *Erie*, 330 Md. at 174, 623 A.2d at 190. Section 5(b) of the Act allows a lien only for actions in tort. The action is not converted to a tort action merely because the employer paid the insurance premiums.

The Village argues that *Erie* is distinguishable from the present case because Maryland had a statute which expressly allowed the insurance company to set off the amounts paid under the worker's compensation plan. However, the *Erie* court's decision was not primarily based on the setoff statute; rather, the discussion of the setoff statute was merely an additional reason for disallowing the employer's lien. *Erie*, 330 Md. at 174-75, 623 A.2d at 191-92. We agree with the primary rationale in *Erie* that the employer is not entitled to assert its lien because the Act allows the lien only for actions in tort.

The second issue on appeal is whether State Farm may set off from the amount due plaintiff the amount of the worker's compensa-

tion benefits paid to plaintiff. The relevant provision of the State Farm policy provides:

> "1. Any amount payable under these coverages shall be reduced by any amount paid or payable to or for the insured:
>
> * * *
>
> c. under any worker's compensation, disability benefits, or similar law."

This issue is controlled by *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 558-59 (1992), in which our supreme court held that such a setoff is valid and rejected an argument that the enforcement of the setoff is against public policy.

However, the Village argues and the trial court found that the result should be different in the present case because the policy is ambiguous. Therefore, the Village argues that the terms of the policy should be construed against State Farm. The trial court agreed and found that the policy should provide coverage to the Village because the Village reasonably expected that the policy would cover the circumstances in the present case.

■ However, the reviewing court must construe the policy as a whole, not just an isolated part. *General Insurance Co. v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514 (1995). It is the function and duty of the reviewing court to construe the contract and not to make a new contract under the guise of construction. *Polzin v. Phoenix of Hartford Insurance Cos.*, 5 Ill. App. 3d 84, 88 (1972).

Although the parties agree that the declarations page lists the Village as the named insured, it is clear that the insured for the purpose of this case is plaintiff. The policy states in relevant part:

> "**Insured**—means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverages.
>
> With respect to **bodily injury**, this is:
>
> 1. the first **person** named in the declarations;
> 2. his or her **spouse**;
> 3. their **relatives**; and
> 4. any other **person** while **occupying**:
>
> > a. **your car** ***. Such vehicle has to be used within the scope of the consent of **you** or **your spouse**[.]"

■ Because plaintiff was occupying the Village's car within the scope of the Village's consent, plaintiff was the insured under the underinsured motorist coverage for bodily injury. The policy is not ambiguous; rather, who is insured under each provision is dependent on the particular circumstances of each case.

The Village argues and the trial court concluded that the Village reasonably expected to be covered under the circumstances of the present case. However, the policy language does not support such an

argument. Where the terms of a contract are unambiguous, the reviewing court must give them their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992). It is not the construing court's duty to determine the reasons parties enter into insurance contracts. We must presume that they read and understood the unambiguous terms of the contract.

Moreover, although the policy does not provide coverage to the Village under the circumstances of the present case, the Village may have obtained coverage for other reasons. For instance, the Village could have retained such coverage as an employee benefit to allow plaintiff to get adequate medical care by filling the gap in the coverage of plaintiff's injuries left by the worker's compensation settlement (assuming plaintiff's injuries exceed the amount of the worker's compensation settlement).

The only provision in the insurance contract that arguably is invalid is the provision that states that there is no coverage to the extent it benefits any governmental body or agency. However, we cannot conclude that this one provision, when read together with the entire policy, renders the setoff provision invalid. Therefore, we conclude that the trial court erred in denying summary judgment to State Farm.

We reverse the judgment of the circuit court of Kane County and remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McLAREN and RATHJE, JJ., concur.